# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARIS ANTOINETTE NELSON, | : | |
| Plaintiff, | : | Civil Action No. 1:17-1569 |
| v. | : | (Judge Mannion) |
| NANCY BERRYHILL, Acting Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner"), denying plaintiff Charis Antoinette Nelson's application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§401-433. The court has jurisdiction pursuant to 42 U.S.C. §405(g). Currently before the court are the parties' cross-motions for summary judgment. (Doc. 12, Doc. 16). For the reasons set forth below, plaintiff's motion will be granted and defendant's motion will be denied. The Court will reverse the Commissioner's decision and remand this case to the Commissioner for further proceedings, including a re-evaluation at step two of whether plaintiff's multiple sclerosis was a severe impairment and a re-evaluation of the limitations which should be included in plaintiff's RFC.

1

## I. BACKGROUND[1]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that plaintiff met the insured status requirements of the Social Security Act through September 30, 2012. (Tr. 15).[2] In order to establish entitlement to disability insurance benefits, plaintiff was required to establish that she suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a); *see* Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Plaintiff was 46 years old at the time of the hearing before the Administrative Law Judge ("ALJ"). (Tr. 71). During all relevant times, plaintiff was a younger person under the regulations. Plaintiff has a high school education. Her past work was as an order clerk and a store laborer. (Tr. 26).

---

[1]The court notes that since the ALJ fully developed the record and since the ALJ, (Doc. 9-2 at 16-28), as well as the parties have stated the full medical history of plaintiff in their respective filings, the court will not fully repeat it herein. Rather, the court discusses below plaintiff's medical history to the extent it is relevant to plaintiff's instant issues raised in this appeal. *See* Durden v. Colvin, 191 F.Supp.3d 429, 449 (M.D.Pa. 2016)("In the social security context, the ALJ must develop the record and provide an explanation for how evidence in the record is treated."). In this case, neither party contends that the ALJ failed to fully develop the record.

[2]References to "Tr. __" are to pages of the administrative record filed by the defendant along with the Answer (Doc. 9).

The vocational expert ("VE") testified that the plaintiff's order clerk job was generally performed at a sedentary level of exertion and is classified as semi-skilled (SVP) based upon the Dictionary of Occupational Titles ("DOT"). It was also noted that plaintiff occasionally performed her order clerk work at a light level of exertion (Tr. 71). Plaintiff alleges that on September 20, 2011, she became disabled and was unable to work.

Plaintiff filed a claim for DIB on January 2, 2014, alleging disability commencing on September 20, 2011. Plaintiff alleged that she was disabled due to several conditions, namely: neck pain, back pain, balance problems, headaches, depression, tingling and numbness in the right hand and legs, Chiari malformation, occipital neuralgia, and multiple sclerosis (Tr. 189-90, 246). The agency denied plaintiff's application on April 23, 2014. Plaintiff filed a request for reconsideration and, on December 9, 2014, the agency denied her request. (Tr. 15). Plaintiff then requested a hearing before an ALJ, which was held on December 9, 2016. (Tr. 15, 35-76).

The ALJ issued a decision on February 14, 2017. The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act from September 20, 2011, through September 30, 2012, the last date insured. (Tr. 27). Plaintiff filed a request for review.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Since plaintiff exhausted her administrative remedies, she initiated the present action on November 1, 2017, appealing the final decision of defendant. (Doc. 2).

Plaintiff appeals the ALJ's determination on two grounds: 1. Whether the ALJ erred in his finding that plaintiff's multiple sclerosis was not a severe impairment during the relevant time period; and 2. Whether the ALJ erred in evaluating the opinions of plaintiff's treating physicians and, by failing to include in his RFC assessment the plaintiff's limitations found by her physicians due to her multiple sclerosis.

As relief, plaintiff seeks the court to reverse the Commissioner's decision and, to remand her case to the Commissioner for further proceedings.

## II. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In the present case, there are cross-motions for summary judgment. "In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c)." Antoniolo v. Colvin, 208 F.Supp.3d 587, 595 (D.Del. 2016) (citing Woody v. Sec'y of the Dep't of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988).[3]

## III. DISABILITY EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial

---

[3]The court does not state herein the well-settled legal standard for a motion for summary judgment. *See* Gloria v. Berryhill, 272 F.Supp.3d 643, 650-51 (D. De. 2017).

gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. §423(d)(2)(A)).

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. §404.1520. *See also* Plummer , 186 F.3d at 428. If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process to conclude that the plaintiff was not disabled within the meaning of the Act. The ALJ found that plaintiff has not engaged in substantial gainful

6

activity since September 20, 2011, the alleged onset date. Next, the ALJ determined that plaintiff suffered from severe impairments, namely the following: degenerative disc disease; mild type 1 Chiari malformation: and obesity. The ALJ also determined that all of the other above stated impairments the plaintiff alleged she had, including multiple sclerosis, were non-severe impairments. (Tr. 17).

The ALJ then found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 18).

The ALJ found that plaintiff had the RFC to perform sedentary work with restrictions, namely: occasional balancing, stooping, kneeling, crouching, or crawling; no climbing of ladders, ropes, or scaffolds and only occasional overhead reaching bilaterally.[4] (Tr. 19).

Additionally, the ALJ afforded great weight to the medical opinion of Dr. Naohtali Britman, a state agency consultant, that plaintiff could perform work at the sedentary level with limitations, and to the psychological opinion of Christopher King, Psy.D., a state agency consultant, that plaintiff did not have a medically determinable mental impariment. The ALJ afforded little weight to

---

[4]Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §416.967(a). Even though a sedentary job is one which involves sitting, a certain amount of walking and standing is frequently necessary to perform the job duties. Thus, jobs are still considered sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* SSR 83-10.

7

the medical opinions of plaintiff's treating physicians Dr. William Atkins, Dr. Conrad King, and Dr. Peter Bandera. The ALJ also afforded little weight to the medical opinion of plaintiff's treating neurologist, Dr. Michael Carunchio, as well as to the medical opinion of Dr. Michael Borek, a state agency consultant. Additionally, the ALJ afforded little weight to the medical opinions of plaintiff's other treating physicians Dr. Anne Mack and Dr. Khaja Yezdani, including their opinions that plaintiff was not capable of performing sedentary work and was permanently disabled.

The plaintiff testified at the hearing, and the ALJ found that her allegations regarding her symptoms, her functional limitations, and her disabling impairments were not entirely credible since they were not supported by her treatment records and by the evidence as a whole. The ALJ did however credit the plaintiff's testimony to the extent that it was consistent with the medical evidence. (Tr. 25-26).

Also, at the hearing, the ALJ posed a hypothetical question to a VE that was based on a person who was the same age, education and work experience as the plaintiff and who could perform sedentary work with the stated restrictions identified in his RFC assessment. The VE testified that such a person with the plaintiff's background and RFC would be able to perform the plaintiff's past relevant work as an order clerk which was classified as skill level SVP 4.[5] (Tr. 26, 73).

---

[5]A SVP 4 calls for semi-skilled work and allows for preparation time of over three months up to and including six months. Semi-skilled work is work

8

The ALJ then determined that the VE's testimony was consistent with the information contained in the DOT, and that the plaintiff was capable of performing her stated past relevant work through the date she was last insured, September 30, 2012. (Tr. 26). Specifically, the ALJ found that plaintiff was able to perform her past relevant work as an order clerk which she performed at a sedentary exertion level and which was semi-skilled. Thus, the ALJ did not proceed to step five of the sequential process. "If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further." Seney v. Colvin, 982 F.Supp.2d 345, 354 (D. De. 2013) (citing 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4)).

## IV. DISCUSSION

Plaintiff's alleged impairments which she claimed rendered her disabled included multiple sclerosis. Plaintiff claims that the ALJ erred by failing to adequately evaluate whether her multiple sclerosis was a severe impairment which caused her symptoms during the relevant time of this case. Plaintiff states that the ALJ did not consider any effects of her multiple sclerosis at step three and, that he failed to include credible limitations for her multiple sclerosis in his RFC assessment.

The relevant time period for this case is September 20, 2011 to

---

which needs some skills but does not require doing the more complex work duties. 20 C.F.R. §404.1568(b); SSR 00-4p.

September 30, 2012. The ALJ found that the plaintiff's alleged multiple sclerosis was not a severe impairment, in part, since it had not lasted at the severe level for a continuous period of 12 months during the relevant time and, since it had not been properly diagnosed by an acceptable medical source during the relevant time period. (Tr. 17-18). As such, the ALJ found that the plaintiff's multiple sclerosis was "not diagnosed during the period of alleged disability", and that it was "non-medically determinable through the date last insured."

Plaintiff, who uses a quad cane and, at times, a walker to ambulate, testified that in 2013 her doctors diagnosed her with multiple sclerosis and that during the year before this diagnosis she was experiencing pain and many symptoms related to this impairment. (Tr. 49-58). Plaintiff contends that her multiple sclerosis was medically determinable during the relevant time of this case. As support, plaintiff points to Dr. Carunchio's November 3, 2016 opinion that she was disabled for gainful employment as a result of her multiple sclerosis and that she was unable to perform sedentary or light work for 8 hours a day. (Tr. 1393-94). Also, Dr. Carunchio opined that plaintiff's multiple sclerosis rendered her disabled from gainful employment since her date last insured. (Tr. 1393-94). Plaintiff also points to Dr. Mack's findings, based on her long time treatment of plaintiff, that plaintiff had limitations that prevented her from being able to work and that these limitations were in existence on September 30, 2012. (Tr. 1370-76). Also, in another source statement, Dr. Mack opined that plaintiff was unable to work as of September

10

30, 2012. Further, on November 21, 2016, Dr. Yezdani completed a statement on her physical abilities to perform work, during the time period between September 2011 and September 2012, and he found that plaintiff was restricted to lifting very little due to her multiple sclerosis, and that she had other limitations, including that she could only stand for approximately 10 minutes and sit for approximately 30 minutes at a time, which rendered her incapable of performing sedentary work 8 hours a day. Dr. Yezdani also opined that plaintiff's condition was permanent and that she was disabled. (Tr. 1712-13).

The court has reviewed the record, and finds that based on plaintiff's testimony as well as the medical evidence and the opinions of her treating physicians that there was a sufficient basis for the ALJ to have more thoroughly evaluated whether plaintiff's multiple sclerosis was severe and whether plaintiff had additional significant limitations due to her multiple sclerosis during the relevant time period that were not included in his RFC assessment.

Since the ALJ found that the plaintiff had not engaged in substantial gainful activity during the relevant time of this case, "step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe." Seney, 982 F.Supp.2d at 354 (citing 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(h)). As mentioned, at step two the ALJ found that plaintiff's degenerative disc disease, type 1 Chiari malformation, and obesity were severe impairments.

However, the ALJ found that plaintiff's multiple sclerosis was non-severe. The regulations provide that a non-severe physical impairment is one that does not significantly limit a claimant's ability to do basic work activities, including physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. *See* 20 C.F.R. §§404.1520(c), 404.1521.

In Sheehan v. Astrue, 2013 WL 1148351, *6 (E.D.Pa. Feb. 28, 2013), adopted by 2013 WL 1155294 (E.D.Pa. Mar. 20, 2013), the court discussed step two and stated:

> Under the regulations at step two, a claimant has a severe impairment if he has "any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). "By contrast, a non-severe impairment has 'no more than a minimal effect' on the individual's ability to perform basic work activities." *See* Woodson, 2004 WL 1102363, at *6 (quoting SSR 85–28, 1985 WL 5685, at *3). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." Woodson v. Barnhart, 2004 WL 1102363, *6 (E.D.Pa. May 11, 2004) (quoting 20 C.F.R. §416.921(b)); *see* 20 C.F.R. §404.1521. Examples of basic work activities include, *inter alia*, mental functions such as: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §404.1521(b).
>
> The Third Circuit has stated that although the substantial evidence standard applies at step two of the sequential evaluation, "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); *see* Mason v. Barnhart, 2004 WL 3019319, *1 (E.D.Pa. Dec.28, 2004). The Court of Appeals explained: "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond a slight abnormality or a

12

combination of abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea, 370 F.3d at 360; *see* Mason, 2004 WL 3019319, at *1.

Thus, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Id. "Reasonable doubts on severity are to be resolved in favor of the claimant." Id.

*See also* Watson v. Astrue, 2012 WL 406374, *7 (E.D.Pa. Jan. 19, 2012) ("It is settled that the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.'" (citing Bailey v. Sullivan, 885 F.2d 52, 59–61 (3d Cir.1989); 42 U.S.C. §423(d)(2)(B); 20 C.F.R. §§404.1523, 416.923; and Social Security Ruling 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")).

Plaintiff argues that every examining source to offer an opinion with respect to her impairments and limitations found at least some limitations due to her multiple sclerosis, and that Dr. Mack and Dr. Yezdani both opined that plaintiff's limitations rendered her disabled and prevented her from full time work during the time period between September 2011 and September 30, 2012. (Tr. 1370-76, 1712-13). Further, while Dr. Mack initially diagnosed plaintiff with "rule out" multiple sclerosis, (Tr. 706, 683,), she later diagnosed plaintiff with multiple sclerosis, chronic pain syndrome, anxiety and

depression. (Tr. 1770, 1775, 1779). Dr. Carunchio also diagnosed plaintiff with chronic pain and multiple sclerosis. (Tr. 1332, 1338, 1342). On March 10, 2013, Dr. Carunchio confirmed that she had "a variety of neurologic symptoms which have been unexplained as to etiology over the years" and that because of changes on MRI scanning of the brain he now considered the possibility of multiple sclerosis as a diagnosis. (Tr. 376). In March 2013, Dr. Jason Silversteen noted that plaintiff's September 2012 brain MRI showed "a few areas of white matter signal abnormality concerning for demyelination." (Tr. 494). In September 2013, Dr. Carunuchio suspected that plaintiff had multiple sclerosis. (Tr. 512). In November 2013, Dr. Silversteen recommended multiple sclerosis treatment for plaintiff. (Tr. 509). On February 2, 2015, Dr. Yezdani diagnosed plaintiff with multiple sclerosis and chronic pain. (Tr. 1663).

The Third Circuit has "long accepted" that the findings of a treating physician "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citations omitted). The regulations as well as courts require the ALJ "give good reasons for the amount of weight given to a treating physician's opinion." Fargnoli, 247 F.3d 42-44; *see also* 20 C.F.R. §404.1527(d)(2).

The court finds that the ALJ failed to properly evaluate plaintiff's multiple

sclerosis.[6] No doubt that the plaintiff has the burden of proof to demonstrate that her multiple sclerosis is a severe medically determinable impairment that significantly limits her ability to do basic work activities. *See* 20 C.F.R. §404.1521(a). The treating physicians found that plaintiff suffered symptoms and had limitations due to multiple sclerosis during the relevant time. Further, the plaintiff's testimony about her symptoms and limitations was consistent with the opinions of her treating physicians. The record as a whole, as detailed by plaintiff in her brief, (Doc. 13), shows that this impairment had more than a minimal effect on the plaintiff's ability to perform basic work activities during the relevant time. Additionally, the record demonstrates that plaintiff's physicians found that she suffered from disabling functional limitations, in part due to multiple sclerosis.

Based on the record, the court finds that the ALJ erred in step two and failed to properly consider whether plaintiff's multiple sclerosis was a severe impairment.

Finally, plaintiff contends that the ALJ erred in his RFC findings by failing to include her limitations due to her multiple sclerosis. The plaintiff

---

[6]As the Commissioner points out, the court recognizes that the step two determination is a threshold analysis requiring the showing of only one severe impairment, and that the ALJ found plaintiff had three severe impairments and did not deny plaintiff benefits at step two. Nonetheless, as the plaintiff contends, the court finds that the ALJ erred not only with respect to step two relating to her multiple sclerosis, but also with respect to later steps relating to this condition, including his RFC assessment. *See* Palin v. Colvin, 2013 WL 5924972, at *3 (E.D.Pa. Nov. 5, 2013) (citing Jennings v. Astrue, 2009 WL 7387721, at *16 (E.D.Pa. Nov. 30, 2009)).

15

contends that the ALJ should have accepted her treating physician's opinions as well as her own statements, and that he should have included the limitations stated therein in his RFC findings and in the hypothetical he posed to the VE. Plaintiff states that if the ALJ included her limitations due to multiple sclerosis, then the VE would have found she could not perform any jobs, and the ALJ would have had to find her disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." *See* Social Security Ruling 96–8p, 61 Fed.Reg. 34475. A "regular and continuing basis" contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id.;* 20 C.F.R. §404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In determining a plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §404.1545(a). Also, the responsibility for determining a plaintiff's residual functional capacity at the hearing level is reserved for the ALJ. 20 C.F.R. §404.1546. The final responsibility for determining the RFC is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §404.1527(e)(2), (3).

Moreover, SSR 96-8p guides on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The Ruling provides that the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." By properly examining the claimant's specific functional abilities, the ALJ determines whether a claimant can perform her past relevant work, what a claimant's appropriate exertional level is, and whether a claimant is capable of doing the full range of work at the exertional level the ALJ finds she can perform.

The court finds that the ALJ did not properly consider plaintiff's statement and testimony regarding her activities, her limitations, her pain and her symptoms due to multiple sclerosis. Nor did the ALJ properly evaluate the opinions of plaintiff's medical providers regarding her multiple sclerosis in arriving at his RFC finding. Thus, the court finds that the ALJ failed to consider the totality of plaintiff's conditions and then failed to adopt all of the limitations supported by the record in his RFC finding. The ALJ also failed to apply all of the limitations in his hypothetical question posed to the VE. The hypothetical question which an ALJ poses to a VE is required to accurately reflect the claimant's impairments that are supported by the record. *See* Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Antoniolo v. Colvin, 208 F.Supp.3d 587, 597 (D.De. 2016) ("A hypothetical question must include all of the claimant's 'credibly established limitations.'") (citing Rutherford v.

Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)).

## V. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment, (Doc. 12), is **GRANTED**, the defendant Commissioner's motion for summary judgment, (Doc. 16), is **DENIED**. Pursuant to 42 U.S.C. §405(g), the decision of the Commissioner will be **VACATED** and, the instant action **REMANDED** for further proceedings consistent with this opinion. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 27, 2018**

O:\Mannion\shared\MEMORANDA - Delaware Cases\17-1569-01.wpd